**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **THADDEUS J. NORTH,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 15-494 (RMC)** |
| | ) | |
| **SMARSH, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

Thaddeus J. North and Mark P. Pompeo (Plaintiffs) were securities brokers who were the subject of enforcement actions by the Financial Industry Regulatory Authority (FINRA). Pursuant to the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.* (Exchange Act), FINRA initiated disciplinary actions against Plaintiffs for alleged improprieties and noncompliance with securities laws and regulations. In pursuing these actions, FINRA asked Smarsh, Inc. — the email vendor for Plaintiffs' former firms — to produce copies of internal and external electronic communications concerning Plaintiffs and other registered brokers.

In the instant case, Plaintiffs allege that the data produced by Smarsh and relied upon by FINRA was spoliated and tampered. Compl. [Dkt. 1]. They seek monetary damages for the intentional or negligent spoliation of the data. *Id.* at 29. Plaintiffs also seek to enjoin FINRA's disciplinary actions, as well as to prevent the dissemination and use of such data in any future proceeding. *Id.* Both FINRA and Smarsh (Defendants) separately move to dismiss. Plaintiffs filed oppositions to both motions to dismiss, to which Defendants filed separate replies. The parties also filed a sur-response and sur-replies. The Court will grant Defendants' motions to dismiss.

# I.  FACTS[1]

## A.  The Parties

Mr. North is a resident of Connecticut.  From February 2008 to August 2011, Mr. North was the Chief Compliance Officer of Southridge Investment Group, LLC (Southridge). In 2010, FINRA began investigating Southridge because of certain improprieties concerning the owner's management of a hedge fund and an alleged business relationship between LK, a broker registered with Southridge, and TC, a person who is a statutorily disqualified from working as a broker.  As a result of the investigation, Mr. North and about half of his Southridge colleagues left that firm and became registered with Ocean Cross Capital Markets, LLC (Ocean Cross).  Mr. North worked at Ocean Cross, also as Chief Compliance Officer, from August 2011 to January 2013.  Mr. North is also a respondent in two FINRA Enforcement Disciplinary Proceedings: (1) Proceeding No. 2010025087302 involving Southridge (Southridge Proceeding); and (2) Proceeding No. 2012030527503 involving Ocean Cross (Ocean Cross Proceeding).  In both proceedings, FINRA accused Mr. North of failing to review sufficient electronic correspondence to ensure compliance with securities laws and regulations.  In the Southridge Proceeding, FINRA also accused Mr. North of failing to identify and report the business relationship between LK and TC.

---

[1] Unless otherwise cited, these facts are taken directly from the Complaint in the instant case. The Court has also considered documents incorporated by reference in the Complaint. *See EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997) (stating that courts may consider documents incorporated by reference in the complaint, as well as any matters of which the Court may take judicial notice, without converting a motion to dismiss into a motion for summary judgment); *see also Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119-20 (D.D.C. 2011) (explaining that courts may consider such documents even if they are not produced "by the plaintiff in the complaint but by the defendant in a motion to dismiss") (citations and internal quotation marks omitted).

Mr. Pompeo is a resident of Massachusetts.  He was a registered securities broker with Southridge from January 2010 to September 2011 and with Ocean Cross from September 2011 to September 2012.  On August 16, 2013, FINRA charged Mr. Pompeo with violating FINRA rules pursuant to FINRA Examination No. 20120305375.[2]  Mr. Pompeo settled the case against him.  As such, Mr. Pompeo is not a respondent in the underlying FINRA disciplinary proceedings.[3]

Smarsh is a New York corporation with its principal place of business and headquarters in Portland, Oregon. Page Decl. in Supp. of Smarsh's MTD [Dkt. 9-1] (Page Decl.) ¶ 2.  Smarsh also has satellite offices in Atlanta, Boston, Los Angeles, New York, and London. *Id.*  Smarsh holds itself out to be "the leading provider of archiving & compliance solutions for companies in regulated and litigious industries." Compl. ¶ 5.  Smarsh contracted with Southridge and Ocean Cross "to preserve exact and unchangeable copies of internal and external communications for all registered representatives of the two (2) firms for compliance at all times from July 1, 2009 through July 1, 2013 (Relevant Period). . . and according to the requirements of the Exchange Act." *Id.*

---

[2] The Complaint indicates that FINRA "charged" Mr. Pompeo with FINRA rule violations. Compl. ¶ 4 n.3.  Defendants respond, however, that FINRA never issued a formal complaint against Mr. Pompeo and, instead, merely sent him a notice of a potential enforcement action. *See* FINRA's MTD [Dkt. 6] at 12 n.7, 13 and Smarsh's MTD [Dkt. 9] at 2.  Whether Mr. Pompeo was formally charged is irrelevant.

[3] Mr. Pompeo executed a Letter of Acceptance, Waiver and Consent (AWC), which FINRA accepted.  According to FINRA Rule 9216(a)(4), an accepted AWC "shall be deemed final and shall constitute the complaint, answer, and decision in the matter."  FINRA's MTD, Ex. 2 (FINRA Rule 9216) at 1-2.  Mr. Pompeo agreed to a ten business-day suspension from association with any FINRA member firm and a $5,000 fine.  FINRA's MTD, Ex. 3 (Mr. Pompeo's AWC).  He also waived his right to appeal, as well as his right to defend against FINRA's allegations. *Id.*

FINRA is a private not-for-profit Delaware corporation and a self-regulatory organization (SRO) in the securities industry.  FINRA is registered with the Securities Exchange Commission (SEC) as a national securities association pursuant to the Maloney Act of 1938, 15 U.S.C. § 78o-3 *et seq.*, and has its headquarters in Washington, D.C.  FINRA serves as both a "professional association [that] promot[es] the interests of its members" and as a  "quasi-governmental agency" authorized "to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or . . . [SEC] regulations issued pursuant thereto."  Compl. ¶ 6 (quoting *Nat'l Ass'n of Sec. Dealers, Inc. v. SEC*, 431 F.3d 803, 804 (D.C. Cir. 2005)).[4]  FINRA's disciplinary actions "may be adjudicated before a [FINRA] Hearing Panel" and the Panel's "decisions may be appealed to the National Adjudicatory Council (NAC), or they may be reviewed by NAC on its own initiative." *Id.* (citations omitted).  NAC can affirm, reverse, or modify the Panel's decision.  Once a final disciplinary action is taken against a member, FINRA must notify the SEC of said action, which "may then act *sua sponte,* or pursuant to a petition from the aggrieved member, to review NAC's decision *de novo.*"  *Id.* (citations omitted); *see also* 15 U.S.C. § 78s(d).  FINRA, in its role as first-level adjudicator, cannot appeal an SEC decision that reverses a NAC decision.  *Id.* at 805.  The aggrieved member, however, may appeal an SEC decision to the relevant U.S. Court of Appeals or the U.S. Court of Appeals for the District of Columbia Circuit.  *See* 15 U.S.C. § 78y.

**B.  FINRA Rules on Electronic Communications**

FINRA Rule 3110(a)-(d) and SEC regulation at 17 C.F.R. § 240.17a-4(f) require securities broker-dealers to preserve all written and electronic communications.  Copies of all electronic communications must be preserved "exclusively in a non-rewritable, non-erasable

---

[4] On July 30, 2007, the National Association of Securities Dealers, Inc. was renamed FINRA.

format." 17 C.F.R. § 240.17a-4(f)(2)(ii)(A).  Such electronically stored information (ESI)

includes emails, chats, instant messages, and like communications regardless of the digital

device used to send or receive them.  The electronic record is the original and official federal

record of these communications.  *See Armstrong v. Executive Office of the President, Office of

Admin.*, 1 F.3d 1274 (D.C. Cir. 1993).  As a result, SEC has warned that any ESI systems that are

vulnerable to the "ability to overwrite or erase records stored on these systems" are "non-

compliant with Rule 17a-4(f)."  Compl. ¶ 12 (quoting *Electronic Storage of Broker-Dealer*

*Records*, Exchange Act Release No. 34-47806, 68 Fed. Reg. 25281-02, 25283 (May 12, 2003)).

As alleged, Southridge and Ocean Cross contracted with Smarsh to ensure their

compliance with these regulatory duties of preservation.  Specifically, they hired Smarsh to:

> (a) use proper care to preserve by commercially responsible
> methods exact, unalterable, non-rewriteable, and non-erasable
> copies of each firm's registered representatives' domain emails,
> Bloomberg messages and other electronic correspondence in a
> permanent file for the Relevant Period, (b) provide access to that
> database of ESI for compliance review, and (c) maintain an accurate
> electronic record that documents ESI compliance reviews.

*Id.* ¶ 14.  Plaintiffs allege that they reasonably relied on Smarsh's "knowledge, expertise and

representations respecting its archival and compliance solutions" and reasonably "believe[d] that

Smarsh would exercise due and proper care in preserving their own and the firms' internal and

external electronic communications in a commercially reasonable manner in an accessible and

properly searchable database."  *Id.* ¶ 28.

### C.  FINRA's Investigation and Disciplinary Proceedings

William E. Schloth, who is not a party to this suit, was the Chief Executive

Officer and General Securities and Financial Operations Principal at Southridge and then Ocean

Cross at all times during the Relevant Period.  Mr. Schloth hired LK in July 2009 and was her

direct supervisor at both Southridge and Ocean Cross.  Mr. Schloth interviewed TC in June 2009,

but did not hire him because of the time and expense of attempting to reverse his disqualification from the industry.  Mr. Schloth informed FINRA in August 2009 about a business relationship between LK and TC.  As a result, FINRA began to investigate LK for allegedly working with TC.

In the course of FINRA's investigation, Southridge and Ocean Cross "arranged for Smarsh to deliver the firms' electronic communications directly to FINRA . . . ."  *Id.* ¶ 34.  FINRA's Department of Enforcement conducted on-the-record interviews of Mr. North and Mr. Schloth in April 2012 and of LK in September 2011 and August 2012.  Following the delivery of Smarsh's records to FINRA, the Southridge and Ocean Cross disciplinary proceedings were initiated against Mr. North in July and August 2013.  FINRA also accused Mr. Pompeo of violating FINRA Rule 2010 and NASD Rule 2210(d) because he had allegedly sent information about investments to the public through email.  As noted, Mr. Pompeo settled the allegations against him and was never a respondent in a FINRA proceeding.

In November 2013 and thereafter, FINRA delivered computer disks to Mr. North containing ESI it had received from Smarsh and on which it based its disciplinary actions against him.  During the on-the-record interviews, witnesses had trouble recognizing some of the emails produced by Smarsh to FINRA.  Due to alleged problems accessing the computer disks and "visible indicia of spoliation to the ESI," Mr. North retained a computer technician in March 2014 to analyze the ESI.  *Id.* ¶ 40.

In April 2014, LK purchased access to her Bloomberg vault — which provides its own email preservation service — and discovered that it contained over 212,000 emails and a few thousand chats of various types for the Relevant Period.  These communications were in extensible markup language (XML).  However, the ESI produced by Smarsh and delivered by

FINRA in the Southridge Proceeding contained fewer than 60,000 records in .pst format attributable to LK and her assistant.  With respect to the Ocean Cross Proceeding, Smarsh also produced fewer emails attributable to LK than the number in her Bloomberg vault for the same time period.

According to Plaintiffs and the computer technician retained by Mr. North, the spoliation included "tens of thousands of emails with language added to sender line descriptions, the substitution or insertion of inaccurate sender and recipient names, formatting and time differences, lost and incomplete content, and multiple copies of the same communication in different formats."  *Id.*   ¶ 44.  Plaintiffs also allege that "tens of thousands of electronic communications that should have been preserved by Smarsh had been lost, destroyed, or withheld."  *Id.*

In February and March of 2015, Berryhill Computer Forensics, Inc. (Berryhill), retained by Mr. North, examined the ESI and concluded "that FINRA has been massively misled by Smarsh."  *Id.* ¶ 55.  Berryhill also concluded that "the data produced by Smarsh has been altered and manipulated to the point of being nearly unrecognizable compared to the original source data."  *Id.*  In both Proceedings, FINRA rejected Mr. North's allegations on the basis that spoliation was irrelevant to the subject of FINRA's enforcement actions — namely, whether or not Mr. North conducted an appropriate review of each firms' electronic communications. FINRA also excluded Berryhill's expert testimony from the proceedings for lack of relevance. Pls. Opp'n to FINRA's MTD, Ex. 3 [Dkt. 13] (FINRA's Evidentiary Order).  Neither Smarsh nor FINRA investigated Plaintiffs' spoliation allegations.  Mr. North petitioned the U.S. Court of Appeals for the District of Columbia Circuit for mandamus relief to enjoin the FINRA proceedings and prevent the use of the alleged spoliated evidence.  The Court of Appeals refused

to intervene and denied the petition.  FINRA's MTD, Ex. 1 (D.C. Cir. Order).  FINRA still has not issued a final disciplinary action against Mr. North.

Plaintiffs complain "they were wrongfully subject to disciplinary actions based on spoliated evidence, and so each was required to report said actions on their official public record and thereby have suffered retribution. . . [and] loss of gainful employment and professional reputation."  *Id.* ¶ 65.  They also claim they incurred legal fees in responding to FINRA's "ill-conceived and unfounded disciplinary proceedings against each of them."  *Id.* ¶¶ 62, 64.  On April 6, 2015, Plaintiffs filed the instant lawsuit against Smarsh and FINRA.  Count I of the Complaint alleges that Smarsh intentionally spoliated the ESI; Count II accuses Smarsh of spoliation through gross negligence; Count III alleges that both Smarsh and FINRA spoliated the electronic communications through simple negligence; and Count IV seeks injunctive relief against both parties to prevent further spoliation and the use and dissemination of these spoliated records.  *Id.* ¶¶ 68-103.

FINRA moves to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and because it is immune from suits related to its enforcement duties under the Exchange Act.  FINRA's MTD at 9.  In the alternative, FINRA contends that Plaintiffs' Complaint should be dismissed for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  *Id.*  Smarsh also moves to dismiss the Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  Smarsh's MTD at 1.  It also moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  *Id.*

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and an Article III requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists.  *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction") (internal citations omitted).

When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court should "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).  A court may consider materials outside the pleadings to determine its jurisdiction.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005); *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003).  A court has "broad discretion to consider relevant and competent evidence" to resolve factual issues raised by a Rule 12(b)(1) motion. *Finca Santa Elena, Inc. v. U.S. Army Corps of*

*Engineers*, 873 F. Supp. 2d 363, 368 (D.D.C. 2012) (citing 5B Charles Wright & Arthur Miller,

Fed. Prac. & Pro., Civil § 1350 (3d ed. 2004)); *see also Macharia v. United States*, 238 F. Supp.

2d 13, 20 (D.D.C. 2002), *aff'd*, 334 F.3d 61 (2003) (in reviewing a factual challenge to the

truthfulness of the allegations in a complaint, a court may examine testimony and affidavits).  In

these circumstances, consideration of documents outside the pleadings does not convert the

motion to dismiss into one for summary judgment. *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13,

21 (D.D.C. 2003).

### B. Motion to Dismiss Under Rule 12(b)(2)

Pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the

burden of establishing a factual basis for the court's exercise of personal jurisdiction over the

defendant." *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003)

(citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)).  In other words,

"the plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts." *First*

*Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988).  Specifically, the

plaintiff "must allege specific acts connecting the defendant with the forum, and . . . the bare

allegation of conspiracy or agency is insufficient to establish personal jurisdiction." *Id.* at 1378-

79 (internal quotation marks, citations, and alteration omitted); *see also Second Amendment*

*Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  Bare allegations and

conclusory statements are insufficient. *Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 42

(D.D.C. 2003).

In determining whether a factual basis for personal jurisdiction exists, a court

should resolve all factual discrepancies in the record in favor of the plaintiff. *Crane*, 894 F.2d at

456.  However, the court need not treat all of the plaintiff's allegations as true. *United States v.*

*Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).  Instead, a court "may receive

and weight affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.* (internal quotation marks and citation omitted).

### C. Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face. Fed. R. Civ. P. 12(b)(6). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id.*, but a court need not accept as true legal conclusions set forth in a complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. A complaint must allege sufficient facts that would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

### III.  ANALYSIS

**A.  Subject Matter Jurisdiction**

Plaintiffs allege tort claims of intentional and negligent spoliation.  They assert that this Court has jurisdiction over the instant case pursuant to 28 U.S.C. § 1331.  Compl. ¶ 1. They also assert that the Court has supplemental jurisdiction over "any state law claims" pursuant to 28 U.S.C. § 1367.  *Id.*  However, the Complaint does not state any claim arising under federal law.  In fact, Plaintiffs' spoliation claims are pure state-law torts.

**1.  Federal Question Jurisdiction**

Federal question jurisdiction exists when a plaintiff's claim arises under federal law.  *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Generally, "a suit arises under the law that creates the cause of action."  *Borg-Warner Protective Servs. Corp. v. EEOC*, 245 F.3d 831, 833 (D.C. Cir. 2001) (quoting *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916)).  In other words, a plaintiff must assert that "a federally ordained rule specifically creates his cause of action."  *Id.* (internal quotation marks omitted).

Federal question jurisdiction may also exist over a state law claim when "a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) (citation and internal quotation marks omitted); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).  Moreover, a "substantial question of federal law" exists "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).  This test, also

known as the *Grable* exception, is "extremely rare," *id.*, and applies to a "special and small category" of cases. *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).

According to Plaintiffs, federal question jurisdiction exists because "the resolution of the underlying claims herein involves [the] application of the [Exchange Act]." Compl. ¶ 1. This proposition is untenable. The Exchange Act governs securities regulation, as well as the role of SROs, such as FINRA. It does not provide a right of action for common-law torts, such as spoliation claims. *See In re Series 7 Broker Qualification Exam Scoring Litigation*, 548 F. 3d 110 (D.C. Cir. 2008) (holding that the Exchange Act does not provide a right of action for suits against an SRO like FINRA for torts committed in connection with its regulatory duties). The resolution of Plaintiffs' claims for monetary and injunctive relief does not involve the Exchange Act. Therefore, the Complaint's reliance on this statute is unfounded.

In their Oppositions, Plaintiffs also argue that federal question jurisdiction exists because FINRA and Smarsh violated a series of criminal obstruction of justice statutes, 18 U.S.C. §§ 1512(c), 1519, as well as federal record-keeping rules, 17 C.F.R. § 2140.17a-4(f)(2)(ii)(A). The argument is also meritless. Without doubt, Plaintiffs do not have a private right of action to enforce these laws. *See, e.g.*, *RJ Prod. Co. v. Nestle USA, Inc.*, 2010 WL 1506914, at *2 n.1 (D.D.C. Apr. 15, 2010) (holding that since criminal statutes under Chapter 18 of the United States Code "do not provide for private causes of action, they cannot be used to grant plaintiff access to federal courts"); *Peavey v. Holder*, 657 F. Supp. 2d 180, 190-91 (D.D.C. 2009) (stating that no private right of action exists to enforce the federal criminal code, particularly §§ 1512 and 1519); *see also In re Series 7*, 548 F. 3d at 114 (holding that there is no private right of action against FINRA for violation of its own rules).

Also, these laws do not contemplate lawsuits for tort spoliation claims.  In fact, none of these laws applies to Defendants.  Section 1512(c) criminalizes the destruction of evidence "with the intent to impair  . . . [its] integrity or availability for use in an official proceeding."  18 U.S.C. § 1512(c)(1); *see also id.* § 1515(a)-(d) (defining "official proceeding" as a proceeding before a federal judge or grand jury, Congress, a federal agency, or an agent or agency involved in the regulation of insurance).  Similarly, § 1519 criminalizes the destruction of evidence "with the intent to impede the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States."  18 U.S.C. § 1519. Since FINRA disciplinary proceedings do not take place before a federal judge, grand jury, Congress or a federal agency,  they are not "official proceedings" within the meaning of § 1512(c).  *See* 18 U.S.C. §§ 1512(c), 1515(a)-(d).  Also, FINRA is a private entity and not a "department or agency of the United States" within the meaning of § 1519.  *See McGinn, Smith & Co., Inc. v. FINRA*, 786 F. Supp. 2d 139, 147 (D.D.C. 2011) ("Courts have repeatedly held that FINRA is a private entity and not a government functionary.") (citation omitted). Consequently, these laws do not apply to the instant case.

Similarly, Plaintiffs' reliance on federal record-keeping rules is misplaced.  *See* 17 C.F.R. § 2140.17a-4(f)(2)(ii)(A).  Aside from the obvious fact that SEC Rule 17a-4 does not create a right of action to raise the spoliation claims at bar, the Rule does not apply here.  This Rule requires each "member, broker and dealer" to "maintain and preserve" certain records and provides that such records may be "produced or reproduced . . . by means of 'electronic storage media'" that "[p]reserve[s] the records exclusively in a non-rewritable, non-erasable format."  *Id.* §§ 240.17a-4(e), (f)(2)(ii)(A).  The Rule also provides that any "agreement with an outside entity shall not relieve such member, broker, or dealer from the responsibility to prepare and maintain

records as specified in this section . . . ." *Id.* § 240.17a-4(f)(i).  The text of the Rule makes clear that the responsibility to prepare and maintain records applies only to a "member, broker, or dealer," such as Plaintiffs, and not a private contractor who may have failed.  *Id.*  Plaintiffs may not rely on the Rule to assert their spoliation claims against Defendants.

Plaintiffs also cite the Administrative Procedure Act (APA), 5 U.S.C. § 551 *et seq.*, and records-management provisions at 44 U.S.C. §§ 3101 and 3106, as possible sources of federal question jurisdiction.  Plaintiffs' reliance on these statutes is equally flawed.  With respect to the APA, Plaintiffs do not seek formal review of any agency regulation or adjudication.  More importantly, the APA does not apply to SROs such as FINRA because FINRA is not an "agency" within the meaning of the statute.  *See Matter of Frank L. Palumbo*, 52 S.E.C. 467, 475 (1995) ("We have repeatedly noted that the [APA] does not apply to self-regulatory organizations such as the NASD.").  Similarly, §§ 3101 and 3106 prescribe the records management obligations of federal government agencies and do not apply to SROs such as FINRA.  *See* 44 U.S.C. §§ 3101, 3106 (requiring "the head of each Federal agency" to preserve records and report any attempt to destroy such records).

Since Plaintiffs cannot point to a federal statute that creates a right of action for the spoliation claims at bar, the Court must determine whether this is one of those "extremely rare" cases that involves a "substantial question of federal law."  *Gunn*, 133 S. Ct. at 1065.  Plaintiffs urge the Court to recognize a federal tort of spoliation in the instant case.  According to Plaintiffs, there should be a civil remedy for spoliation of evidence and the use of such evidence in federal agency proceedings.  Furthermore, Plaintiffs argue that such a remedy is necessary because: (1) Defendants do business across the United States; (2) there is a "national interest for juridical consistency, regulatory accountability and operational integrity within support services

15

provided in the financial and securities markets in which Defendants FINRA and Smarsh are regularly engaged;" (3) a civil remedy in this context would deter wrongful conduct; (4) American jurisprudence favors both monetary and injunctive relief as possible tort remedies; (5) "destruction of evidence is harmful to the parties depending upon it;" and (6) there are multiple jurisdiction involved in the instant case.  Pls. Opp'n to FINRA's MTD at 12-13.

   Plaintiffs' arguments fail for various reasons.  First, as earlier explained, FINRA disciplinary proceedings are not "federal agency proceedings."  *Marchiano v. Nat'l Ass'n of Securities Dealers, Inc.*, 134 F. Supp. 2d 90, 95 (D.D.C. 2001) (noting that every court has held that NASD is not a state actor).  Second, there is no federal issue central to this case.  The resolution of Plaintiffs' spoliation claims does not involve any interpretation or consideration of a federal statute or rule.  Moreover, the adjudication of said claims is "fact-bound and situation-specific," and does not involve a "pure issue of law that could be settled once and for all and thereafter would govern numerous cases."  *Bender*, 623 F.3d at 1130 (quoting *Empire*, 547 U.S. at 700-01)) (internal quotation marks omitted).  A "fact-bound and situation-specific case," such as the immediate suit, generally does not raise legal issues of central importance to the "federal system as a whole," *Gunn*, 133 S. Ct. at 1066, and this one does not.  Additionally, Plaintiffs have failed to show a "significant conflict between some federal policy or interest and the use of state law."  *O'Melveny & Myers v. FDIC*, 512 U.S. 75, 79 (1994).  The Court is constrained to conclude that this case does not present a "substantial question of federal law."  *Bender*, 623 F.3d at 1130.

   In the absence of a federal statute providing a right of action or a substantial question of federal law, it follows that Plaintiffs' spoliation claims do not arise under federal law. *Id.*  Consequently, the Court does not have federal question jurisdiction under § 1331 over

Plaintiffs' claims.  Without § 1331 jurisdiction, there is no supplemental jurisdiction under 28

U.S.C. § 1367.  *See Campbell v. American Int'l Grp. Inc.*, 926 F. Supp. 2d 178, 182 (D.D.C.

2013), *aff'd* 760 F.3d 62 (D.C. Cir. 2014).

## 2.  Diversity Jurisdiction

Smarsh contends that Plaintiffs' claims must be dismissed because the Complaint

failed to establish the Court's subject matter jurisdiction.  However, noticeably absent from the

parties' briefs is any discussion of the Court's diversity jurisdiction under 28 U.S.C. § 1332.[5]

District courts have original diversity jurisdiction over civil actions when: (1) the matter in

controversy exceeds $75,000, without considering interest and costs; and (2) when the

citizenship of each plaintiff is different from the citizenship of each defendant.  28 U.S.C.

§ 1332(a).

In the instant case, the record clearly establishes that diversity jurisdiction exists

over Plaintiffs' claims.  The amount in controversy easily exceeds the statutory requirement, *see*

Compl. at 29, and there is complete diversity of citizenship between the parties.  *See id.* ¶¶ 3-6

(indicating that: (1) Mr. North is a resident of Connecticut; (2) Mr. Pompeo is a resident of

Massachusetts; (3) FINRA is a private not-for-profit corporation headquartered in Washington,

D.C.; and (4) Smarsh is a corporation with its principal place of business and headquarters in

---

[5] Strangely, Plaintiffs mention in passing that "the jurisdiction of this court is not based upon diversity . . . ." Pls. Opp'n to FINRA's MTD at 12.  In the same way that "parties cannot stipulate to jurisdiction where none exists," *see Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003),  it is also clear that "a plaintiff cannot draft a complaint in a manner that divests a federal district court of jurisdiction that unquestionably exists." *Santos v. America Cruise Ferries, Inc.*, No. 13-cv-1537, 2015 WL 1212115 at *3 (D.P.R. March 17, 2015).  Since the Court has an independent duty to determine its jurisdiction, the Court will proceed without regard to Plaintiffs' assertion. *See Settles*, 429 F.3d at 1107.

Oregon); *see also* FINRA's MTD at 10 (explaining that FINRA is a private not-for-profit incorporated in Delaware) and Page Decl. ¶ 2 (explaining that Smarsh is a private corporation incorporated in New York and headquartered in Oregon).  Since the jurisdictional requirements of § 1332 are met, Plaintiffs' spoliation claims would have to arise under state law.  *See* Compl. ¶ 70 (citing *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 848 (D.C. 1998)) (recognizing a claim of third-party negligent or reckless spoliation as a tort action under District of Columbia law).

### B.  Smarsh's Motion to Dismiss

Plaintiffs seek both injunctive and monetary relief against Smarsh for spoliating the ESI that was produced to FINRA.  Compl. at 29.  Specifically, Plaintiffs assert claims of intentional or grossly negligent spoliation, as well as negligent spoliation, against Smarsh.  *Id.* ¶¶ 68-103.  They also seek punitive damages.  *Id.* at 29.  Smarsh moves to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  The Court holds that it does not have personal jurisdiction over Smarsh.  Therefore, the Court will not address Smarsh's Rule 12(b)(6) argument and will dismiss Plaintiffs' claims against Smarsh without prejudice.

### 1.  Personal Jurisdiction

To establish personal jurisdiction over Smarsh, a non-resident defendant, Plaintiffs must show that: (1) "jurisdiction is applicable under the state's long-arm statute" and (2) "a finding of jurisdiction satisfies the constitutional requirements of due process."  *Thompson Hine LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (quoting *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000)).  Also, Plaintiffs "must rely on D.C. law to sue nonresident defendants, since no federal long-arm statute applies."  *Edmond v. U.S. Postal Serv. Gen'l Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991).  In other words, Plaintiffs must

establish that D.C. law authorizes the Court to exercise either general or specific jurisdiction over Smarsh — a New York corporation with its principal place of business and headquarters in Oregon.

### i.       General Jurisdiction

"District of Columbia law . . . permits courts to exercise 'general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District if the corporation is 'doing business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002) (citing D.C. Code § 13-334 (a)).  According to the District of Columbia Court of Appeals, "the reach of 'doing business' jurisdiction under § 13-334(a) is coextensive with the reach of constitutional due process." *Id.* at 510 (citing *Hughes v. A.H. Robins Co.*, 490 A.2d 1140, 1148 (D.C. 1985)).  This means that general jurisdiction "is only permissible if the defendant's business contacts with the forum district are 'continuous and systematic.'" *Id.* at 509-510 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)).

The record demonstrates that Smarsh has no offices, data centers, servers, employees or agents in the District of Columbia.  Page Decl. ¶ 3.  In fact, none of the company's operations is conducted in the District.  *Id.*  According to Bonnie Page, Smarsh's General Counsel, Smarsh earned $35 million in 2014, of which only $180,438 came from the District of Columbia. *Id.* ¶ 6.  The D.C. revenue only represented 0.05% of Smarsh's overall business. *Id.*  Plaintiffs generally argue that "the existence of a revenue stream referenced by Ms. Page strongly suggests meaningful, affirmative commercial undertakings, marketing activities, and direct solicitation of business in the District of Columbia sufficient to satisfy general

jurisdictional requirements." Pls. Opp'n to Smarsh's MTD [Dkt. 15] at 13. The argument is devoid of substance.

"It is not enough to merely mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Plaintiffs fail to allege any facts indicating that Smarsh's business contacts with the District are "continuous and systematic." *See El-Fadr v. Cent. Bank of Jordan*, 75 F.3d 668, 675 (D.C. Cir. 1996) (holding that "isolated and sporadic contacts unrelated to the claims in the instant case" are insufficient to establish general jurisdiction). Also, since Plaintiffs did not serve Smarsh with summons in the District of Columbia, they cannot invoke § 13-334 (a) as the basis of personal jurisdiction in the instant case. *See Gorman*, 293 F.3d at 514 (quoting *Everett v. Nissan Motor Corp.*, 628 A.2d 106, 108 (D.C. 1993)) ("Where the basis for obtaining jurisdiction over a foreign corporation is § 13-334 (a), . . . a plaintiff who serves the corporation . . . outside the District is 'foreclosed from benefitting from [the statute's] jurisdictional protection.'"). Therefore, the Court holds that Smarsh is not subject to the Court's general jurisdiction as authorized by D.C. law and the Due Process Clause.

### ii.       Specific Jurisdiction

Since general jurisdiction is not available, the Court must decide if it has specific jurisdiction over Smarsh. District of Columbia law authorizes "so-called 'specific jurisdiction' over a person for claims arising from the person's 'transacting any business' in the District." *Id.* at 509 (citing D.C. Code § 13-423(a)(1)). It is well-established that "the 'transacting any business' clause has been interpreted to provide jurisdiction to the full extent allowed by the Due

Process Clause." *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995). [6] This means that

"the statutory and constitutional jurisdictional questions, which are usually distinct, merge into a

single inquiry: would exercising personal jurisdiction accord with the demands of due process?"

*Thompson Hine*, 734 F.3d at 1189 (citing *Ferrara*, 54 F.3d at 828).

 Due process requires "'minimum contacts' between the defendant and the forum

'such that he should reasonably anticipate being haled into court there.'" *Id.* (quoting

*International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *World-Wide Volkswagen Corp.*

*v. Woodson,* 444 U.S. 286, 297 (1980)).  "Such minimum contacts must show that "the defendant

purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla,* 357 U.S.

253, 253 (1958)).  Furthermore, these minimum contacts are necessary to make sure that "the

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

*International Shoe*, 326 U.S. at 316 (citations omitted); *see also Crane v. New York Zoological*

*Society*, 894 F.2d 454, 455-56 (D.C. Cir. 1990).

 The record does not support a finding that Plaintiffs' spoliation claims arise out

Smarsh's minimum contacts with the District.  In fact, Plaintiffs concede that Smarsh's contracts

with Southridge and Ocean Cross were negotiated, signed, executed, and performed outside of

the District of Columbia. *See* Pls. Opp'n to Smarsh's MTD at 11; *see also* Page Decl. ¶ 3

(explaining that "Smarsh's protocols and processes relating to the Southridge and Ocean Cross

---

[6] While the District of Columbia is not a "state" for purposes of the Fourteenth Amendment's
Due Process Clause, due process has been incorporated into the Fifth Amendment of the
Constitution, which does apply here.  *See Ins. Corp. of Ireland v. Compagnie des Bauxites de
Guinee*, 456 U.S. 694, 702 (1982) ("The requirement that a court have personal jurisdiction
flows not from Art. III, but from the Due Process Clause.... It represents a restriction on judicial
power not as a matter of sovereignty, but as a matter of individual liberty."); *see also Ferrara*, 54
F.3d at 832-33 (Silberman, J., concurring).

archiving and subscription services were not set up in the District of Columbia"). Plaintiffs' only argument is that because Smarsh delivered the spoliated ESI to FINRA, which is headquartered in the District of Columbia, and because Smarsh employees voluntarily participated in FINRA hearings, it must be that Smarsh purposefully availed itself to the Court's jurisdiction as authorized by § 13-423(a)(1). The Court disagrees.

Plaintiffs' claims against Smarsh arise out of the alleged intentional or negligent spoliation of the ESI produced to FINRA. Since "Smarsh's protocols and processes relating to the Southridge and Ocean Cross archiving and subscription services were not set up in the District of Columbia," *see* Page Decl. ¶ 3, it cannot be that Plaintiffs' spoliation claims arise out of any business transacted in the District. *See Gorman*, 293 F.3d at 509 (holding that "specific jurisdiction" is not available where the claim "does not arise out of any business transacted between the parties in the District . . . ."). Plaintiffs do not argue otherwise. The fact that Smarsh's employees participated in FINRA hearings is beside the point. This participation, as well as the location of FINRA's headquarters, has nothing to do with the alleged spoliation of the ESI. In fact, since the employees' participation in the underlying proceedings took place well after the alleged spoliation was committed, Plaintiffs' spoliation claims "could not have arisen out of" the employees' participation. *Richter v. Analex Corp.*, 940 F. Supp. 353, 359 (D.D.C. 1996).[7] Similarly, the production of allegedly spoliated ESI to FINRA cannot be the basis for specific jurisdiction because said production occurred after the alleged spoliation was committed

---

[7] It is worth noting that Smarsh's employees never physically entered D.C. to participate in FINRA hearings or proceedings. Instead, they testified by telephone while they were located in Oregon. Plaintiffs do not argue otherwise. *See* Pls. Opp'n to FINRA's MTD at 12 n. 10. ("The November 5 and 25, 2015 telephonic hearing participants were located in Oregon (Smarsh), Virginia (Plaintiffs' counsel), and the District of Columbia (the hearing officer)."). In fact, the physical proceedings occurred outside of the District — in Boston, New York, and New Orleans. *See id.*, Ex. 5 and 9 (Southridge Hr'g. Tr. Excerpts); *id.*, Ex. 8 (Ocean Cross Hr'g. Tr. Excerpts).

and because it was incidental to Smarsh's primary relationship with its former customers in

Connecticut.  *See id.* (finding the mailing of documents to a law firm in the District to be

insufficient to satisfy the due process standard of minimum contacts and purposeful availment);

*see also Cellutech, Inc. v. Centennial Cellular Corp.*, 871 F. Supp. 46, 49-50 (D.D.C. 1996)

(finding defendant's filings with the SEC in the District, as well as contacts by phone and

interstate courier service with attorney in the District, to be insufficient to establish jurisdiction).

Finally, Plaintiffs urge the Court to exercise personal jurisdiction over Smarsh

because of the important public policy considerations involved in the instant case.  Among these

considerations — most of which are irrelevant — are a "national concern regarding a federally

regulated industry" and a "national interest of juridical consistency, regulatory accountability and

operational integrity . . . in the financial and securities markets in which . . . Smarsh is regularly

engaged."  Pls. Opp'n to Smarsh's MTD at 14. Without demeaning these "public policy

considerations," the Court cannot ignore the constitutional and statutory limits to its jurisdiction.

Since Plaintiffs have failed to show that their claims arise out of any business transacted in the

District, the Court will dismiss the Complaint against Smarsh without prejudice.

## C.  FINRA's Motion to Dismiss

Plaintiffs seek both injunctive and monetary relief against FINRA for relying on

the alleged spoliated evidence to prosecute them.  While this Court has original diversity

jurisdiction over the case, it lacks jurisdiction to review or enjoin FINRA's disciplinary actions

and proceedings.  In addition, FINRA is absolutely immune from suit for its regulatory acts.

Consequently, the Court must dismiss Plaintiffs' claims against FINRA.

### 1.  Injunctive Relief

The Exchange Act establishes a mandatory process for resolving FINRA

disciplinary actions.  *Marchiano*, 134 F. Supp. 2d at 92.  That process does not contemplate the

involvement of federal district courts. *Id.* at 92, 94-95. The D.C. Circuit has clearly held that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Telecommunications Research and Action Center v. F.C.C.,* 750 F.2d 70, 75 (D.C.Cir.1984) (*TRAC*)). Pursuant to *TRAC*, a district court does not have jurisdiction to review or enjoin FINRA's disciplinary actions if: (1) the relevant statute "commits review to the Court of Appeals"; and (2) "the action seeks 'relief that might affect the Circuit Court's future jurisdiction.'" *Marchiano*, 134 F. Supp. 2d at 93 (quoting *TRAC*, 750 F.2d at 75). Both factors are satisfied in the instant case.

First, it is clear that FINRA's disciplinary actions against Plaintiffs originate from the authority delegated by the Exchange Act, *see* 15 U.S.C. § 78a *et seq.* The Exchange Act provides that a person aggrieved by a final disciplinary action can appeal the FINRA Hearing Panel's order to the NAC, then to the SEC, and ultimately to the relevant Circuit Court of Appeals or to this Circuit. *See* 15 U.S.C. §§ 78s, 78y; *see also Marchiano*, 134 F. Supp. 2d at 93. Since the Exchange Act "vests jurisdiction in a particular court" — namely, the Circuit Courts of Appeals — it follows that the statute "cuts off original jurisdiction" in this Court. *TRAC*, 750 F.2d at 77; *In re Series 7*, 548 F.3d at 114 (stating that the Exchange Act's "multiple layers of review evince Congress'[s] intent to direct challenges . . . to the avenues Congress created").

Second, Plaintiffs' plea to enjoin FINRA proceedings would prevent the Hearing Panel from issuing a final disciplinary order against Mr. North. The disciplinary proceedings against Mr. North have not concluded, and "[w]ithout a final [FINRA] order, there would be no review by the Court of Appeals." *Marchiano*, 134 F. Supp. 2d at 93 (citing *Ohio Edison Co. v.*

24

*Zech*, 701 F. Supp. 4, 7 (D.D.C. 1988); *Jamison v. Federal Trade Commission,* 628 F. Supp. 1548, 1551 (D.D.C. 1986)).  An injunction would prevent the Circuit from reviewing FINRA's evidentiary determinations concerning the relevance of Mr. North's spoliation allegations and related expert testimony.  *See id.*

Plaintiffs' claim that FINRA has relied on spoliated evidence constitutes a collateral attack on the validity of the underlying disciplinary actions — namely, Mr. Pompeo's AWC and FINRA's enforcement proceedings against Mr. North.  Before this Court, Plaintiffs are "effectively challenging the manner in which FINRA has decided to investigate and conduct disciplinary hearings against them."  *McGinn, Smith*, 786 F. Supp. 2d at 146.  Under *TRAC*, Plaintiffs are barred from launching such collateral attacks because they "almost certainly implicate[ ] issues that would be addressed by the Court of Appeals upon final review of FINRA's ruling."  *Id.*  (citing *Ohio Edison*, 701 F. Supp. at 6).  Since the Exchange Act grants exclusive jurisdiction to a U.S. Court of Appeals, this Court lacks jurisdiction under *TRAC* in the instant case to grant Plaintiffs' request for injunctive relief.  *See Air Line Pilots Ass'n, Int'l v. Civil Aeronautics Board,* 750 F.2d 81, 88 (D.C. Cir. 1984) (holding that the district court lacked *TRAC* jurisdiction to review collateral attacks, such as whether the agency was biased against the plaintiff).[8]

Plaintiffs fail to advance any arguments concerning the Court's possible lack of jurisdiction under *TRAC*.  Instead, they merely argue that they should not be required to complete the Exchange Act's multiple layers of review because, *inter alia*, review is futile and inadequate.  However, Plaintiffs conflate *TRAC*'s two-prong analysis with the Exchange Act's

---

[8] Whether Plaintiffs seek to enjoin the proceedings as a whole or just the use of the alleged spoliated evidence, this Court does not have jurisdiction to intervene in FINRA's disciplinary proceedings.

requirement that aggrieved persons must exhaust their administrative remedies.  *See Marchiano*, 134 F. Supp. at 93-94 (distinguishing the jurisdictional bar under *TRAC* from the Exchange Act's exhaustion requirement); *see also Swirsky v. Nat'l Ass'n of Secs. Dealers, Inc.*, 124 F.3d 59, 61 (1st Cir. 1997) (requiring plaintiffs to exhaust the Exchange Act's "process of both administrative and judicial review of disciplinary proceedings").

This Court's lack of jurisdiction under *TRAC* is independent from Plaintiffs' failure to exhaust their administrative remedies.  Even if Plaintiffs had exhausted their remedies — which they did not — *TRAC* makes clear that Plaintiffs still would not be able to raise their spoliation claims before this Court.[9]  *TRAC*'s jurisdictional bar does not depend on the alleged futility or inadequacy of the administrative process.  Congress expressly vested federal circuit courts with original exclusive jurisdiction to review or enjoin FINRA's disciplinary actions.  Mr. North presumably knew this when he petitioned the U.S. Court of Appeals for the District of Columbia Circuit for mandamus relief.  Merely because that petition failed does not mean that

---

[9] Mr. North's failure to exhaust the Exchange Act's administrative procedures "render[s] the district court without jurisdiction to entertain the suit."  *First Jersey Secs., Inc. v. Bergen*, 605 F.2d 690, 700 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074 (1980).  In the instant case, FINRA has not issued a final decision as to Mr. North.  Consequently, Mr. North has not even concluded the first step of the Exchange Act's administrative process.  Mr. Pompeo settled the allegations against him.  In doing so, Mr. Pompeo waived his right to defend against the allegations made by FINRA.  Even if Mr. Pompeo could still challenge the AWC, the Exchange Act clearly indicates that this Court does not have jurisdiction to consider such a challenge. *See Swirsky*, 124 F.3d at 59-60 (rejecting collateral attack by broker who challenged his settlement with NASD).  The Court is not persuaded that any of the exceptions to the Exchange Act's exhaustion requirement applies in the instant case.  *See Marchiano*, 134 F. Supp. 2d at 94-95 (dismissing suit for lack of *TRAC* jurisdiction and, in the alternative, for failure to exhaust administrative remedies).  Plaintiffs' arguments regarding the futility and inadequacy of the administrative remedies are not pertinent to the Court's holding that it has no jurisdiction under *TRAC* in the instant case.

Mr. North can circumvent the explicit avenues for review that Congress directed.  This Court simply does not have jurisdiction to entertain Plaintiffs' request for injunctive relief.[10]

### i.    Dismissal or Transfer Under 28 U.S.C. § 1631

Since the Court lacks jurisdiction over Plaintiffs' prayer for injunctive relief, it must determine whether "it is in the interest of justice to transfer this action to the appropriate Court of Appeals in lieu of dismissing it." *McGinn, Smith*, 786 F. Supp. 2d at 146 (citing 28 U.S.C. § 1631; *see also TRAC*, 750 F.2d at 79 ("Because the precedent in this circuit may have implied that the District Court has concurrent jurisdiction over claims concerning nonfinal agency action, . . . [w]e assume that, rather than dismiss these suits for want of jurisdiction, the District Court will transfer them to this court under [§ 1631].").  In determining whether transfer is in the interest of justice, the Court can consider various factors, such as the "likelihood of success on the merits and irreparable harm." *McGinn, Smith*, 786 F. Supp. 2d at 147.  In fact, "by taking a 'peek at the merits,'" the Court can "avoid raising false hopes and wasting judicial resources that would result from transferring a case which is clearly doomed." *Haugh v. Booker*, 210 F.3d 1147, 1150 (10th Cir. 2000) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999)).

---

[10] The D.C. Circuit has recognized an exception to *TRAC* for constitutional claims. *See Time Warner Entertainment Co., L.P. v. F.C.C.*, 93 F.3d 957 (D.C. Cir. 1996).  Under this narrow exception, a plaintiff's "constitutional challenge to the enabling statute by which the agency acts" renders *TRAC* inapplicable. *Marchiano*, 134 F. Supp. at 94 (citation omitted); *see also Time Warner*, 93 F.3d at 965 (noting that the constitutional claim exception applies to a "constitutional challenge that is exclusively directed to the source of putative agency authority," as opposed to "a challenge to the manner in which the agency has exercised or . . . failed to exercise that authority").  In the instant case, Plaintiffs do not allege that the Exchange Act — FINRA's enabling statute — is unconstitutional. *See Marchiano*, 134 F. Supp. at 94 (holding that the exception did not apply because the plaintiff only asserted that NASD officials were biased against him and exercised their authority in an unconstitutional manner).  Therefore, *TRAC*'s constitutional exception does not apply and this Court does not have jurisdiction to hear Plaintiffs' spoliation claims.

The Court first notes that Plaintiffs failed to recognize the relevance of *TRAC*, let alone request the transfer of this action to the D.C. Circuit.  In addition, "it appears that Plaintiffs will have difficulty establishing a meritorious claim that could justify the extraordinary relief they have requested."  *McGinn, Smith*, 786 F. Supp. 2d at 147.  The claim of negligent spoliation against FINRA requires Plaintiffs to establish the following seven elements:

> (1) [t]he existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action.

*Cook v. Children's Nat'l Medical Center*, 810 F. Supp. 2d 151, 155 (D.D.C. 2011) (citing *Holmes*, 710 A.2d at 854) (other citation omitted).  With respect to the first required element, it is well-established that District of Columbia law only recognizes the tort of negligent spoliation when raised against a "third party."  *Id.* at 157.  In other words, a claim of negligent spoliation applies only to a third-party spoliator that has allegedly destroyed or tampered evidence that is relevant to a plaintiff's claim against a different person or entity.  *See id.* at 157 n.3 (citing *Holmes*, 710 A.2d at 848-49) (other citations omitted).

In the instant case, Plaintiffs do not allege "the existence of a potential civil action in which [FINRA], the alleged spoliator, is not a party."  *Id.* at 159 (dismissing negligent spoliation claim against an entity also being sued in a malpractice case).  FINRA "cannot be a third-party spoliator regardless of whether [P]laintiffs name other parties . . . ."  *Id.*  Simply put, since FINRA is not a duty-bound, third-party spoliator within the meaning of *Holmes*, Plaintiffs are highly unlikely to succeed on the merits of their negligent spoliation claim against it.

With respect to the issue of irreparable harm, Plaintiffs do not allege that there is a risk of further spoliation.  Mr. Pompeo already settled the allegations against him by entering into an AWC with FINRA and the merits hearings in the Southridge and Ocean Cross Proceedings against Mr. North have already concluded.  Also, Mr. Pompeo does not explain how he would be irreparably harmed if the Court does not enjoin the pending proceedings against Mr. North.  In terms of concrete damages, Plaintiffs complain that they have incurred significant litigation expenses in responding to FINRA's disciplinary proceedings.  Nonetheless, "courts have uniformly recognized that '[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'"  *McGinn, Smith*, 786 F. Supp. 2d at 147 (quoting *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)).  They also allege without specificity that FINRA's alleged negligent spoliation has resulted in retribution, as well as loss of gainful employment and professional reputation.  *See* Compl. ¶¶ 62, 64-65.  The Court recognizes that these damages could rise to the level of irreparable injury.  However, FINRA has not issued a final disciplinary action against Mr. North and some of the charges in the Southridge and Ocean Cross Proceedings — i.e., whether Mr. North reviewed sufficient electronic correspondence as required by securities laws and regulations — have nothing to do with the content of the spoliated ESI.  Therefore, it is unclear how enjoining FINRA from using spoliated ESI against Mr. North would avoid the alleged harms.

After reviewing the potential merits of Plaintiffs' negligent spoliation claim and allegations of irreparable harm, the Court finds that it is not in the interest of justice to transfer Plaintiffs' action to the Court of Appeals.  The Court will dismiss Plaintiffs' prayer for injunctive relief without prejudice for lack of subject matter jurisdiction.

### 2.  Monetary relief

Plaintiffs also ask for damages for the alleged negligent spoliation of the ESI.

However, FINRA is "absolutely immune from suit for the improper performance of regulatory,

adjudicatory, or prosecutorial duties delegated by the SEC." *In re Series 7*, 548 F.3d at 114; *see*

*also Weissman v. NASD*, 500 F.3d 1293, 1298 (11th Cir. 2007) ("Indeed, every case that has

found an SRO absolutely immune from suit has done so for activities involving an SRO's

performance of regulatory, adjudicatory, or prosecutorial duties in the stead of the SEC.").  In

other words, FINRA cannot be liable for "claims arising out of the discharge of its duties under

the Exchange Act." *D'Alessio v. New York Stock Exchange, Inc.*, 258 F.3d 93, 105 (2d Cir.

2001), *cert. denied*, 534 U.S. 1066 (2001).  The underlying rationale is that FINRA and other

SROs should not be held liable for acting under the authority delegated by the Exchange Act that

"encourage[s] forceful self-regulation of the securities industry." *Barbara v. New York Stock*

*Exchange*, 99 F.3d 49, 59 (2d Cir. 1996); *see also Sparta Surgical Corp. v. NASD*, 159 F.3d

1209, 1215 (9th Cir. 1998) ("[W]hen Congress elected 'cooperative regulation' as the primary

means of regulating the over-the-counter market, the consequence was that self-regulatory

organizations had to enjoy freedom from civil liability when they acted in their regulatory

capacity.").

Plaintiffs concede that FINRA is absolutely immune for its regulatory acts.

Nonetheless, Plaintiffs contend that FINRA is not entitled to immunity here because it engaged

in intentional tortious or criminal conduct.  *See* Pls. Opp'n to FINRA's MTD at 22 (arguing that

"[i]ntentional spoliation, alteration, and falsification of records are clearly not a regulatory,

adjudicatory, or disciplinary function" and that "there is no immunity that protects FINRA for

any actions that violate 18 U.S.C. §§ 1512(c) and 1519").  Even assuming *arguendo* that

Plaintiffs' argument is correct, the Complaint only asserts a claim of intentional spoliation against Smarsh, not FINRA.  *See* Compl. at 29. Count I of the Complaint alleges that Smarsh, not FINRA, intentionally spoliated the ESI.  Compl. ¶¶ 68-85.  Count III alleges that both FINRA and Smarsh spoliated the ESI through simple negligence.  *Id.* ¶¶ 90-93.  Since the Complaint does not allege any intentional conduct by FINRA, Plaintiffs' argument has no merit. Similarly, the argument that FINRA's liability arises from its supposed criminal conduct also fails because Plaintiffs cannot enforce the federal criminal code and because §§ 1512 and 1519 do not apply to FINRA.  *See supra* Part III, Section A at 13-14.

FINRA does not exceed its delegated authority when it pursues disciplinary cases against registered representatives in the securities industry.  That is precisely what Congress intended FINRA to do.  *See* 15 U.S.C. § 78o-3; *see also In re Series 7*, 548 F.3d at 115.  In the instant case, FINRA acted pursuant to its statutorily delegated authority when it investigated Plaintiffs, entered into an AWC with Mr. Pompeo, and conducted the ongoing disciplinary proceedings against Mr. North.  These actions fall squarely within FINRA's regulatory and prosecutorial functions.  Furthermore, FINRA's decisions to exclude expert testimony and reject the spoliation allegations as irrelevant were nothing more than evidentiary decisions, subject to appeal.[11]  Accordingly, FINRA was acting within the scope of its delegated adjudicatory

---

[11] On December 2, 2015, Plaintiffs filed a motion asking the Court to order the production of digital records for examination.  Pls. Mot. to Compel [Dkt. 28].  Plaintiffs contend that the production of the digital records will allow the Court to "address the predicate issues of jurisdiction raised by [Smarsh and FINRA] . . . ."  Pls. Mem. in Supp. of Mot. to Compel [Dkt. 28-1] at 1.  However, Plaintiffs fail to explain why such production is relevant to Defendants' jurisdictional arguments.  Plaintiffs' request for limited discovery necessarily requires the Court to step in and interfere with FINRA's investigation, prosecution, and evidentiary decisions.  No production of any documents, however tampered with, could change the fact that: (1) this Court lacks jurisdiction under *TRAC* over FINRA's claim for injunctive relief; (2) FINRA is absolutely immune from suit for the improper performance of its regulatory, prosecutorial, and adjudicatory

authority.  *See* FINRA's MTD, Ex. 2 (FINRA Rule 9263) at 3.  Finally, the Complaint does

allege that FINRA was misled by Smarsh and negligently relied on spoliated ESI to pursue the

underlying enforcement actions against Plaintiffs.  Compl. ¶¶ 90-103.  Nonetheless, at the very

most, these allegations only show that FINRA failed to properly perform its delegated functions.

Since FINRA is "absolutely immune from suit for the improper performance of . . . [its] duties,"

Plaintiffs cannot defeat immunity in the instant case.  *In re Series 7*, 548 F.3d at 115 (affirming

the dismissal of a tort action against FINRA for admitted mistakes committed while

administering a securities licensing exam).  Plaintiffs' claim for monetary relief will be

dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant both FINRA's Motion to Dismiss,

Dkt. 6, and Smarsh's Motion to Dismiss, Dkt. 9, and deny Plaintiffs' Motion for Orders to

Produce Digital Records for Examination, Dkt. 28.  In sum, the Court finds that it has no general

or specific jurisdiction over Smarsh.  Accordingly, the Court will dismiss the Complaint against

Smarsh without prejudice for lack of *in personam* jurisdiction.  With respect to Plaintiffs'

negligent spoliation claims against FINRA, the Court finds that *TRAC* divests the Court of

jurisdiction to entertain Plaintiffs' prayer for injunctive relief.  Moreover, since Plaintiffs are

unlikely to succeed on the merits of their claim and it is unclear that they will suffer irreparable

harm as a result of the continuation of the FINRA proceedings, the Court finds that transfer to

the D.C. Circuit is not in the interest of justice.  The Court will dismiss Plaintiffs' claim for

injunctive relief against FINRA without prejudice for lack of subject matter jurisdiction.  The

acts; and (3) this Court lacks *in personam* jurisdiction over Smarsh.  Accordingly, the Court will
deny Plaintiffs' motion.

Court also holds that FINRA is absolutely immune for its regulatory and prosecutorial acts and, thus, will dismiss Plaintiffs' claim for monetary relief against FINRA with prejudice.  A memorializing Order accompanies this Memorandum Opinion.


Date: December 4, 2015

                            _____/s/_____
                            ROSEMARY M. COLLYER
                            United States District Judge